Good morning. My name is Larry Anderson. I represent Gary Butler, the plaintiff and the appellant in this action. I would like to reserve three minutes of my time for rebuttal if I may. All right. You see the clock there, and I'll also try to help you out. Thank you. There are two torts and two injuries in this case. The story of this case basically starts with the first tort, the defectively designed bungee cord that came loose from its mooring and struck Plaintiff Gary Butler in the eye. Counsel, we're really familiar with this story, and I'm concerned about your time. Thank you. Are we going to move to the misrepresentation tort? Yes. Okay. That's exactly where we are. All right. The basic point here is this. We have a Montana resident who relied on misrepresentations in Montana. This Montana resident took actions in Montana, and this Montana resident took or suffered injuries as a result of the Idaho adjuster's misrepresentations. Weren't those misrepresentations first made in Idaho, though? That's... That's what the district court... Correct. That's true, but the key... And that initial meeting took place in Idaho? It did. Is that correct? It did. Well, what about the other representation in the deposition at ER 114, the representation of here's a settlement offer, $50,000 is a fair settlement offer? That was a telephone conversation directed from Idaho into Montana. And so it didn't occur in Idaho? No. But the others, to Judge McKeon's point, the other ones did. That's true, but the key point in this case, particularly in the context of misrepresentation torts, is the reliance occurred, the statement, this is a fair offer, was directed from Idaho into Montana. The Montana resident took action based on that misrepresentation in Montana, and the action he took is he agreed to a settlement, he signed a settlement, a release in Montana, he received a check in Montana. Counsel, it seems under 148, we're looking at the restatement, of course, 148 2A is the place the plaintiff received the representations. That's Montana. Most of them in Idaho, then repeated in Montana, except the one, which is the settlement offer, the one we just reviewed. This is a fair settlement. If you look at restatement comments I and J, the key to the analysis of 148 2 is where was the reliance, where was the residence of the plaintiff, and where were the injuries suffered? All of those are in Montana. Counsel, comment G says this is the place where the representations were first communicated to the plaintiff. Most of the representations were first communicated in Idaho, but not all of them, as we've just discussed. But the next sentence says, in the same comment, says this place is not so important a contact as is the place where the plaintiff acted in reliance on the defendant's representations. But that's not quoted in the judge's order. That's true. Here's the problem with the judge's order. We didn't address 148 in our briefing because Montana does not have any law on restatement of Conflicts 148. Our basic law comes from the seminal case of Phillips v. G.M. But why wouldn't Montana follow and apply Phillips in this case? That's our point. Montana would apply Phillips in this case because we're talking about a dramatic and stark policy differences between Montana tort law and Idaho tort law as applied to a Montana resident. And the key point here in this case, as Phillips emphasizes Well, let me just see if I'm missing something. But if you take the underlying principle of Phillips, which is the most significant relationship approach, correct? Yes, ma'am. Okay. And so you're, in this situation, it's a question of how one filters all the facts through the significant relationship. And you simply disagree with how the district court came out. Yes, we do. If you look at paragraph 53 of Phillips, you look at paragraphs 53, 54, and 55 of Phillips, you look at paragraphs 73, 74, and 75 of Phillips. The key elements of Phillips is what are the policy differences and what is the residence? Montana's policy is to protect Montana residents who've been injured by wrongful conduct. But you agree with Judge McEwen's first observation that the district court here applied the most significant relationship test. But aren't you really disputing how Judge Osby analyzed the facts under that test? We are saying that she misapplied the significant relationship test based on Phillips. The particular paragraphs of Phillips That's not what I'm hearing. And maybe it's a semantic difference. But it looks to me like she did apply the most significant relationship test. You just dispute how she applied it to these facts. Yes, we do. Is that accurate? Well, we do. But I think you're making a semantic distinction, really, without a difference. The key point here is with respect to the 148 factors, she disregarded and said were not implicated the key factors in the case that comments I and J say are the key comments. And when you look at Phillips and you see that Phillips emphasizes the importance of the stark differences between the policies of the two states, and the policy here is we protect in Montana tort victims. We provide them with maximum compensation to the full extent of the law. Idaho does directly different. And Phillips clearly, the Phillips paradigm would clearly apply under these circumstances. Now, you're down to two minutes, essentially. Do you want to save the rest? Yes, ma'am. All right. Thank you. Good morning. May it please the Court. My name is Emily Jones. I represent Intermountain Claims in this matter. Mr. Butler's central argument is that Montana's public policy should trump all other choice of law factors in this case. However, this approach is one that the Montana Supreme Court has expressly rejected in Phillips itself. Our high court has said that there is no public policy exception to the most significant relationship test. This is because the restatement factors consider states' competing public policies. Counsel, how do you apply the test? Can we just go through your application? We're going to go down the list. Can you just tell me how you apply the test? Yes, Your Honor. We agree with Judge Osby that she correctly considered Section 148 and Section 145 in conjunction with the Section 6, Subsection 2 restatement factors, and that her approach was correct. Okay. So 148, 2A, the place of reliance is Montana, right? Yes, we agree that the place of reliance was Montana, although I think it is important to note, Judge Kristen, that Butler did obviously sign the release in Montana and he accepted the settlement check in Montana, but he had to send the release to Idaho to trigger payment. If he had signed the release, slept on it for a day, and then ripped it up, the settlement check would not have been sent. So, I mean, Idaho is still there. But the place of reliance. He did not. That's true. He did not. The place of reliance is Montana, right? Yes. Yes, Your Honor. So let's move on. 148, 2B. 148, 2B strikes me as mixed. The place the plaintiff received the representation. Some in Idaho. Some in, or at least one, a very important one, in Montana that wasn't mentioned by the court. But the other thing I'd like to get your feedback on here is that the court said this is the place where the representations were first communicated to the plaintiff, and most of them were communicated in Idaho first. Yes. They're repeated in Montana according to the deposition testimony. But then it goes on to say this place is not so important as a contact as is the place where the plaintiff acted in reliance on defendant's representations. Could I hear your response to that? Yes, Your Honor, and that is true. However, we don't think the first factor trumps all the other factors in that, on balance, Idaho still has the most significant relationship to the parties in the occurrence in this case. Well, I'm asking a different question. Sorry, I wasn't very clear. On 148-2B, is your position that that is mixed, or does it favor Idaho? Our position is it favors Idaho. Why? Why is that? The only representation that was made in Montana was that $50,000 was a fair offer. But, counsel, you're not answering the question about the commentary that's here that says this is not as important as where he relied. So what is your position on that, please? We agree. That is the law. I don't disagree that it's not as important as the place of reliance. But there are other factors to consider as well. Can you clarify something for me? The premise for Judge Kristen's question, I thought, was that the court ignored the fact that he accepted the $50,000 offer in Montana. I'm looking at ER-28, the first full paragraph, and Judge Osby writes, Butler acted in reliance upon defendant's representations in Montana after he consulted his wife and decided to accept Intermountain's $50,000 offer. That's not the premise. The premise of the question is a little different, just so you have a chance to respond. The premise of the question is that one of the representations was only made in Montana, and it wasn't mentioned by the trial court. I'm sorry. Can you repeat your question? Well, just so you understand, I think I might have been unclear. The premise of the question is, my understanding is that you started by taking the position that all the representations were made in Idaho. One of them wasn't. One of them was only made in Montana.  I'm sorry if I misspoke, Your Honor. We agree that the $50,000 offer was made in Idaho, received in Montana. Maybe that's a better way of saying it. And as I read the district court's opinion, she understood that fact. Yes, I agree. Because we're reviewing de novo, aren't we? You are. So I don't know why we're dissecting the district court's opinion exactly. So your position, I take it, is even if there is the single representation that's Montana-based, that the bulk of the representations were Idaho-based? That's correct, Judge McEwen. Yes. And the initial representations that were allegedly made, which all occurred at a face-to-face meeting in Idaho, as Judge Christen pointed out, were repeated in phone calls that were made from Idaho, received in Montana, or vice versa. And then, of course, the offer made in Idaho, received in Montana. So I think the gist of Mr. Anderson's argument, and not a bad one at all, is where you started. It seems that the major difference, because this is kind of an eye of the beholder as to which side of the scale all this weighs on, but I think what he's saying is that he reads Phillips not as saying necessarily that public policy trumps everything in terms of Montana, but that you can't just ignore it. And so given the very different approaches that Montana and Idaho take, how does the Montana public policy figure into the analysis here? Thank you, Your Honor. So Phillips, the Phillips court expressly addressed this in Phillips because as Mr. Butler, or I'm sorry, as Mr. Anderson stated, and he's correct, Phillips did rely heavily on the public policy argument for that case. But that's a case with very different facts than what we have here. The plaintiffs were in Kansas essentially by happenstance. They were traveling across the country for a family vacation. Here we have Mr. Butler traveling to Idaho on purpose to move his mother-in-law. He has significant contacts with Idaho. The underlying tort, product, claim, and injury occur in Idaho. Again, I know you know all the facts of the case. And the Montana Supreme Court said in Phillips that while public policy was an important consideration for them in that case, that those principles need not be given equal consideration in every case. At paragraph 71, the court said varying weight must be given to a particular factor or group of factors in different areas of choice of law. And the court also specifically said that the facts and circumstances of each case are to be considered individually. I think that's right. So how do we – what does that mean for this case? For this case, I think it's clear on balance that the state with the most significant relationship to the parties in the occurrence is Idaho. Going through – Occurrence, does that mean occurrence meaning the eye injury? Or are we talking about the misrepresentation? Both. Both, Your Honor. Clearly, with the underlying tort, it occurred in Idaho. The product was purchased in Idaho. It was offered for sale in Idaho, which is exactly why Intermountain Claims assigned an Idaho adjuster to that case. Why is that fair to consider now when we're talking about – that's his argument. Yes. That now we're talking about the misrepresentation tort. And that's a different negotiation between the parties, quite different. So could you explain to me why? It is. Yes. I think it is important to note that the underlying claim was adjusted according to Idaho law because of its connection with Idaho. And that is why Intermountain Claims assigned an Idaho adjuster. And so it's reasonable to assume that an Idaho adjuster would be adjusting an Idaho claim under Idaho law. And, again, that's supported by the facts of the case. Mr. Butler made the claim in Idaho, traveled back to the place where he purchased the cargo net to report the alleged defect with it, personally met with Mr. Hoffman, the adjuster, in Idaho at a face-to-face meeting. The alleged initial representations were made in Idaho. The four that he, you know, specifically said stuck in his craw. And then the claim continued to be adjusted between Idaho and Montana. But the only contacts that Montana has with the case are Butler's residence and the fact that the settlement check was sent there. Not something to be discounted, however. It is not something to be discounted, Your Honor. It's a weighing. It's a balancing test. And so on balance, the factors favor the application of Idaho law. So when you move from 148 to 145, and you're looking at contacts under 145, I think are your last comments directed primarily to 145 or to both of them? To both of them. Our position is the factors of 148 and 145 and Section 6 all, on balance, weigh in favor of application of Idaho law. I wonder about it because another way to look at this is that we've got this Phillips opinion from the Montana Supreme Court. And as you say, very unusual. Idaho and Montana, you know, very different policy. One much more protective than the other. And a company, an insurance company that's doing business in both states, surely very aware of that, and an adjuster then, you know, figuratively reaching across the line to deal with a Montana resident. There's a – I'm not so sure what the Montana Supreme Court would do here in this case, given those differences. Do you want to speak to that, that your adjuster was working essentially across the line and surely knew that, given that he's a licensed professional? Sure. He was dealing with a Montana resident and obviously was aware that Mr. Butler was a Montana resident. But given that he was adjusting a tort claim that I think undisputedly would have been – Idaho law did and would have applied to had he chosen to sue, it was reasonable for him to rely on Idaho law in adjusting that claim. That's precisely the reason Intermountain Claims assigned an Idaho adjuster, not a Montana adjuster. That's why it's so important that this is – we're talking about a misrepresentation tort here and not the underlying personal injury claim. That's correct, Your Honor. You know, I guess I would also go back to the Restatement Section 6's factors on justified expectations and certainty, predictability, and uniformity of result. If we expect insurance companies to assign adjusters and essentially conduct a choice of law analysis prior to assigning adjusters and attempt to discern the law that's to be applied in adjusting the claim, I think we are going to get a lot of unpredictable and non-uniform results. I think opposing counsel's argument would be that what this plaintiff – and who knows about the allegations of the misrepresentation claim, but his expectations are that an adjuster would deal with him fairly. And surely that's going to be your company's policy, regardless of where it's adjusting a claim. And Idaho clearly has an interest in regulating that conduct within its own borders, and that's where this conduct occurred. Thank you. Thank you very much. You have some rebuttal time. Thank you. The first tort, the products tort, is clearly governed by Montana law based on Phillips. Phillips is on all fours with the products case. Phillips involved a Michigan product sold in North Carolina. Montanans injured in Kansas. Montana and Phillips had very little trouble finding that Montana's choice of law applied. And because of the strong public policies regarding protection against dangerous products. But aren't there significant differences in the facts between Mr. Butler's case and Phillips? They are, but they're not. There's no significant differences in the paradigm between the two cases. Well, I'm not so sure. I mean, this wasn't a casual traffic accident that occurred while passing through on an interstate through Kansas. This guy had significant contacts with Idaho. No, not Idaho. His contacts. He bought the cargo net there. The injury occurred there. He was loading the truck to move his mother-in-law from Idaho to Montana. I have no doubt that. You think the factors, if we were just looking at the original product liability claim, would apply Montana law? Absolutely. We're talking about, we're talking, and I'm referring to paragraphs 53 of Phillips. I'm referring to paragraphs 73, 4, and 5 of Phillips. Those would clearly militate in favor of applying Montana law to these facts. With respect to the misrepresentation tort, the magistrate judge disregarded the basic important factors that are referenced in comment J of 148. The key is where was their reliance, where was their injury, where is the plaintiff's residence. All of those militate for applying Montana law. And I just have five seconds left. All right. Thank you. We'll give it back to you. Thank you. The case just argued is now submitted, Butler v. North American Capacity. Thank you for coming over from Montana, all of the counsel, and thank you for your argument.
judges: McKeown, Tallman, Christen